**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

KRISTINE HOLMES, individually as surviving mother and heir at law of ELIJAH HOLMES, deceased,

*Plaintiff,*

vs.

KELLER KRUG,

*Defendants.*

Case No. 16-1080-EFM-KGG

**MEMORANDUM AND ORDER**

In December 2014, Elijah Holmes was killed in an automobile accident. He was 18 years old. Elijah's mother, Plaintiff Kristine Holmes, seeks to recover against the driver of that automobile—Defendant Keller Krug—for the wrongful death of her son. Before the Court is Krug's motion for partial summary judgment (Doc. 14). Krug seeks judgment limiting Kristine's potential recovery of pecuniary damages to medical and funeral expenses only. Because the evidence viewed in the light most favorable to Kristine supports an award of pecuniary damages, the Court denies Krug's motion.[1]

[1] Krug has also filed a motion to strike Kristine's expert (Doc. 16). The Court has scheduled a *Daubert* hearing and will consider that motion at that time. But even without considering the expert's evidence, Krug is still not entitled to summary judgment on the issue of pecuniary damages.

## I. Factual and Procedural Background[2]

Kristine Holmes had two sons. Brad was the oldest, and Elijah was a year younger. When Brad and Elijah were in middle school, Kristine and their father divorced. From that point on, just Kristine, Brad, and Elijah lived at their home in Natoma, Kansas.

During high school, the boys helped Kristine cook, clean the house, and take care of the animals, although Brad and Kristine both noted that despite his attempts to help, Elijah was not much of a cook and sometimes would break dishes. When Elijah was living with his mom, he would vacuum three or four times a week and did the dishes every day. But Kristine's dad—Elijah's grandfather—did most of the outdoor maintenance, such as mowing the yard. Elijah would also help his grandparents if they needed something moved or rearranged around their house.

When he was a freshman in high school, Elijah began suffering seizures, and so he never got his driver's license. Nonetheless, he would run errands to the local post office or quick shop for his mom. Elijah worked at a grain elevator during two summers in high school, working as few as 10 hours some weeks to as many as 40 hours a week during harvest.

Upon graduating from high school in 2014, Elijah received a scholarship to play football at Bethel College. But despite the partial scholarship, Bethel's tuition proved too expensive for Kristine. So in the fall of 2014, Elijah moved back in with Kristine for three days. Elijah then moved to Hays, where he lived with his cousin.

While he was living in Hays, Elijah would make the 45 minute trip home to Natoma almost every weekend. Because Elijah did not have a driver's license, Kristine usually picked

[2] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

him up on Friday and dropped him back off in Hays on Sunday. About once a week, Kristine and Elijah would go out to eat or see a movie together. Brad considered his little brother a "mama's boy," and noted that Elijah and Kristine were always there for each other. Specifically, Elijah was very supportive of Kristine when she went through her divorce and when her brother passed away.

Elijah planned on attending Fort Hays State University at the beginning of the spring semester in 2015. Elijah wanted to study communications—he hoped for a career involving music, sound, and computers. According to Brad, his dream job would have been a stage technician, and he would have moved to somewhere like Los Angeles if he had the chance. Until the spring semester began, Elijah worked full time for Cross Manufacturing in Hays. But Brad, who worked in the oil field, was trying to help Elijah get a job with him. Elijah used his paychecks to pay his bills. Kristine noted that Elijah was learning how to budget, although she admitted that like many teenagers, he tended to go through his money as fast as he made it. Kristine also helped her son out by buying him groceries and giving him some cash from time to time. Elijah did not have a credit card or debt of any kind.

On December 26, 2014, Elijah was a passenger in a vehicle driven by Keller Krug. The vehicle collided with a tractor trailer and Elijah was killed. He was 18 years old. Kristine claims that she never would have asked her sons to financially support her, but she had expected Elijah to be with her, in some way, for the rest of her life. She believes that Elijah would have been there for her as she got older because "Elijah was a kind soul" and "would have been there to help his mom." Elijah had told Kristine that he would always be there for her and that he loved her.

Kristine, as Elijah's heir, brings this wrongful death action against Krug. She is seeking both pecuniary and non-pecuniary damages. Krug now moves for partial summary judgment, asking the Court to limit Kristine's potential pecuniary damages to medical and funeral expenses only.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[3] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidenced permits a reasonable jury to decide the issue in either party's favor.[4] The moving party bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.[5] If the moving party carries this initial burden, the non-moving party that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" from which a rational trier of fact could find for the non-moving party.[6] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[7] To survive summary judgment, the non-moving party's evidence must be

---

[3] Fed. R. Civ. P. 56(a).

[4] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[5] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986)).

[6] *Id.* (citing Fed. R. Civ. P. 56(e)).

[7] *Mitchell v. City of Moore, Okla*., 218 F.3d 1190, 1197-98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th. Cir. 1998)).

admissible.[8] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

## III. Analysis

The substantive law of Kansas, the forum state in this diversity action, governs the Court's analysis.[10] In wrongful death cases, Kansas law recognizes two categories of damages: pecuniary and non-pecuniary.[11] "Nonpecuniary damages generally are intangible in nature" and include "mental anguish, bereavement, loss of society and loss of companionship."[12] A plaintiff can recover no more than $250,000 for non-pecuniary losses in a wrongful death case.[13] On the other hand, there is no limit to the amount of recovery for pecuniary damages.[14] Pecuniary losses are tangible, economic losses.[15] They obviously include medical and funeral expenses that arose from the alleged tort.[16] Those damages are not contested here. Instead Krug contends that medical and funeral expenses represent the extent of Kristine's pecuniary damages. In other words, Krug argues that there is no evidence that Kristine has suffered any pecuniary losses in addition to medical and funeral expenses.

---

[8] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[10] *BNSF Ry. Co. v. C.A.T. Constr., Inc.*, --- F. App'x ---, 2017 WL 563066, at *3 (10th Cir. Feb. 13, 2017).

[11] K.S.A. § 60-1903.

[12] *McCart v. Muir*, 230 Kan. 618, 626, 641 P.2d 384, 391 (1982); PIK Civ. 4th 171.32.

[13] K.S.A. § 60-1903(a).

[14] *McCart*, 230 Kan. at 625, 641 P.2d at 391 ("No dollar limitation is placed on pecuniary loss.").

[15] *Id.* at 626, 641 P.2d at 391.

[16] PIK Civ. 4th 171.32.

In *Wentling v. Medical Anesthesia Services, P.A.*,[17] the Kansas Supreme Court referred to this other type of pecuniary damages as "loss of services, care and guidance."[18] These are those "benefits or compensation that reasonably could have been expected to have resulted from the continued life of the deceased."[19] When a parent seeks to recover for the death of a child, Kansas courts have described these pecuniary damages as the benefits which the parent may have reasonably expected to receive from the child had he lived.[20] These damages include loss of filial care, attention or protection, and loss of earnings that the child would have contributed to the parent during the remainder of his lifetime.[21]

The court in *Wentling* noted that it is difficult to assign a monetary value to these pecuniary losses. And yet, the court noted that there could be no serious contention that the lack of care, guidance, and services lacked monetary value.[22] Thus, the Court declared that "[t]he mere fact these items of loss, having acknowledged economic value, are incapable of exact economic *valuation* does not mean plaintiff should be denied recovery."[23] Instead, under Kansas law, a plaintiff satisfies his burden of proof with regard to these damages by establishing the

---

[17] 237 Kan. 503, 701 P.2d 939 (1985).

[18] *Id.* at 509, 701 P.2d at 944.

[19] *Laterra v. Treaster*, 17 Kan. App. 2d 714, 726, 844 P.2d 724, 732 (1992) (internal quotation mark omitted) (quoting *McCart*, 230 Kan. at 626, 641 P.2d at 391).

[20] *Huffman v. Thomas*, 26 Kan. App. 2d 685, 692, 994 P.2d 1072, 1077 (1999) (citing *Laterra*, 17 Kan. App. 2d at 726, 844 P.2d at 732).

[21] PIK Civ. 4th 171.32.

[22] *Wentling*, 237 Kan. at 514, 701 P.2d at 948.

[23] *Id.*

nature and extent of the losses asserted.[24] "Once such evidence is presented, the jurors are presumed to be capable of converting the losses into monetary equivalents based on their own knowledge and experience."[25]

In other words, Kristine is not required to identify specific examples of filial care, attention or protection, and loss of earnings that Elijah would have provided to meet her burden with regard to pecuniary damages. Rather, she must show the nature and extent of the losses she has incurred; from there, the jury must determine whether she suffered pecuniary losses, as defined under Kansas law.[26] Based on Kristine's losses, the jury must determine whether she could have reasonably expected to receive benefits from Elijah had he lived, and if so, assign them value.[27] Thus, as long as Kristine has presented evidence from which a jury could determine that she could have reasonably expected to receive benefits from Elijah had he lived, Krug is not entitled to summary judgment.

Krug argues that Kristine's pecuniary damages should be limited to medical and funeral expenses for the following reasons: (1) Elijah provided no financial support or services that would give rise to such damages; (2) Elijah did not provide advice, protection, training, or

---

[24] *Burnette v. Eubanks*, 52 Kan. App. 2d 751, 772, 379 P.3d 372, 387 (2016) (citing *Wentling*, 237 Kan. at 510, 701 P.2d at 945).

[25] *Id.* (citing *Wentling*, 237 Kan. at 510, 701 P.2d at 945); *see also Ceretti v. Flint Hills Rural Elec. Coop. Ass'n*, 251 Kan. 347. 363, 837 P.2d 330, 342 (1992); *Huffman v. Thomas*, 26 Kan. App. 2d 685, 692, 994 P.2d 1072, 1077 (1999).

[26] *See, e.g. Huffman*, 26 Kan. App. 2d at 692, 994 P.2d at 1077 ("In many instances, the burden of proof can be satisfied simply by showing the nature and extent of the loss asserted. This would include evidence that the decedent regularly cooked, cleaned, or maintained the home. The jury is presumed to be capable of converting the losses into monetary equivalents."); *see also Mahomes-Vinson v. United States*, 751 F. Supp. 913, 925 (D. Kan. 1999) ("[Plaintiff] is not required to prove her losses with mathematical certainty. The 'better and more equitable rule' provides that the burden of proof is satisfied simply through a showing of the nature and extent of the losses asserted.").

[27] *Burnette*, 52 Kan. App. 2d at 773-74, 379 P.3d at 388 (quoting *Wentling*, 237 Kan. at 514, 701 P.2d at 948).

guidance to Kristine; and (3) Elijah lived away from home, and wanted a career away from home, and thus would not have provided support in the future. The Court will address each of these arguments in turn.

**A. Kristine has presented evidence supporting pecuniary losses in the form of financial support or services.**

Krug claims that there is zero evidence supporting an award of damages on the theory that Elijah would have contributed to his mom financially or provided any services of monetary value. In support of this contention, Krug points to the following snippets of evidence: Brad testified that Elijah never told him that would financially support Kristine in the future;[28] Kristine testified that she would have never asked her sons to support her; and Kristine gave cash to Elijah, who, according to Krug, "was a spender and went through money as fast as he earned it." Additionally, Krug avers that Elijah did not contribute to household chores, and Kristine did not expect him to. As Krug puts it, "Elijah did not do the dishes, laundry, or cook, because according to his brother Brad, he did not know how." Furthermore, Krug asserts that when he did do the dishes or laundry, "Elijah broke the dishes and ruined the laundry." Essentially, Krug's argument is that Elijah took more than he gave, and therefore, Kristine is not entitled to any damages for pecuniary losses because based on the evidence, Kristine could not have reasonably expected to receive any benefits from Elijah had he lived. As Krug—emphasis his—argues:

> *Elijah was no child. He was an adult.* By age eighteen, Elijah could have demonstrated a degree of responsibility indicative of the probability that he would provide valuable services to his mother later in life. But, Elijah did <u>not</u> demonstrate such behavior.

---

[28] It is worth noting that Elijah also never told Brad that he *would not* financially support his mom in the future.

This characterization of Elijah is unsupported by the evidence, and Krug's argument is unsupported by Kansas law.

At the outset, Krug's argument mischaracterizes the evidence. The evidence does not present Elijah as the financially irresponsible, unhelpful son that Krug describes. The record shows that Elijah did the dishes and vacuumed for his mom every day when they lived together—while Elijah was still in high school. He worked during the summers in high school and held a job in Hays while he waited to start college classes. Although he was more of a spender than a saver, at 18 years old he paid his own bills and had no debt. The evidence shows that Elijah was about as financially responsible and helpful as the average teenager, if not more so.

Furthermore, Krug's argument runs counter to Kansas law. The key takeaway from Kansas cases on the issue of pecuniary losses is that the jury is tasked with assigning value to future benefits that obviously have value, but for which a number is difficult to ascertain.[29] And admittedly, that number is even more difficult to identify when the plaintiff is a parent and the decedent is 18 years old without a defined career or specific lifetime plans. But in Kansas, "parents have long been able to recover economic damages for the death of a majority-age child."[30]

In any event, the jury must first determine whether there would have been any economic benefits had Elijah survived, and second, must assign value to those benefits. This is no easy

[29] *Burnette*, 52 Kan. App. 2d at 772, 379 P.3d at 387.

[30] *Id.* at 771-72, 379 P.3d at 387.

task, and the jury must rely on their knowledge in experience is accomplishing it.[31] And the law is clear, for Kristine to meet her burden—that is, in order for the jury to make such a determination—she must establish the nature and extent of the losses she has suffered.[32] She has done so.

Yes, Elijah was 18. But Kristine still contends that she lost her baby, and any mother would agree. Kristine called Elijah a kind soul who was always there for her. She claims that she fully expected him to care for her as she got older, and the evidence suggests that Elijah and Kristine were extremely close. Even after graduating high school and relocating to Hays, Elijah spent a great deal of time with his mother, going on weekly outings with her and traveling home to spend weekends with her. A reasonable jury—one composed of mothers of 18 year olds, and former 18 year old sons of such mothers—would probably find Elijah's affection for his mom to be greater than normal. And such a jury would almost certainly determine that Elijah would have provided some form of support or services to his mom throughout his life. Whether the dollar value of those benefits would have been substantial or slight is a question for a jury.

Although loss of companionship is a non-pecuniary loss,[33] Elijah and Kristine's bond can serve as evidence that benefits would have been provided because "pecuniary loss may arise from a deprivation of benefits that could reasonably be expected to have been received, originating from no more than a moral obligation."[34] And if a jury finds such a loss, it must then determine the monetary value of those potential benefits. It could be negligible, if the jury finds

---

[31] *Id.*at 772, 379 P.3d at 387.

[32] *Id.*

[33] PIK Civ. 4th 171.32.

[34] *Burnette*, 52 Kan. App. 2d at 772-73, 379 P.3d at 387 (internal quotation marks omitted) (quoting *Wentling*, 237 Kan. at 509, 701 P.2d at 944).

that Elijah might not have earned very much money or might have moved far away. But because Kristine has presented the nature and extent of her losses, the value of those losses is a question for a jury. The Court will not make such a determination here.

**B. Kristine has presented evidence supporting pecuniary losses in the form of advice, protection, training, or guidance.**

Advice, protection, training, and guidance are other examples of pecuniary losses recognized under Kansas law.[35] Although it is difficult to precisely measure the value of such losses, "there is really no serious contention that the care, guidance and services" of a decedent lack monetary value.[36] Krug argues that Kristine has presented no evidence of such losses.

Krug's argument is similar to the one advanced regarding financial support or services. In short, Krug contends that before his death, Elijah never offered advice, protection, training, or guidance, and thus, Kristine cannot argue that he would have in the future. Krug cites Brad's testimony that Elijah never gave his mom any advice or counsel. He only testified that Elijah consoled Kristine when she lost her brother. Kristine responds by arguing that given the amount of support that Elijah provided at the age of 18, a jury could infer that the support would continue as Elijah grew older. She notes the "strong and significant companionship" between Elijah and Kristine, and argues that advice, guidance, and a sense of protection is inherent in such a relationship.

It is unusual to think of a son providing advice, protection, or guidance to his mother; the inverse is much more typical. But every family is unique; this universal truth explains the law's preference that jurors use their shared knowledge and experience to convert pecuniary

---

[35] *See, e.g., Ceretti*, 251 Kan. at 365, 837 P.2d at 344.

[36] *Wentling*, 237 Kan. at 514, 701 P.2d at 948.

losses into their monetary equivalent.[37] Kristine is not barred from recovering for the loss of advice, protection, or guidance simply because such losses might not be the norm. Indeed, Kansas courts have consistently recognized that such losses can be suffered by a parent who loses a child.[38]

Krug argues that Kristine's evidence suggests only that she lost companionship, which is a non-pecuniary loss in Kansas.[39] The Court agrees the Kristine cannot recover pecuniary damages for the loss of companionship that she no doubt suffered. Yet, under Kansas law evidence of such companionship can give rise to an inference of pecuniary damages.[40] In *Burnette v. Eubanks*,[41] the Kansas Court of Appeals found that the plaintiff had presented evidence of pecuniary damages in a case similar to this one.

> Here, the record reveals that multiple witnesses testified that "[the decedent] devoted great care to his parents, that [the decedent] engaged in numerous and regular activities with his parents, that [the decedent] was very attentive to the needs of his parents, and that [the decedent] was very close to his parents." Even [the defendant] concedes on appeal that "without question, [the decedent] had a close relationship to his parents" and "no one doubts the closeness of the family."
>
> The [plaintiffs'] evidence, which if accepted as true and viewed in the light most favorable to them, supports their claim for pecuniary damages under *Wentling*. And, while neither party attempted to place a specific dollar value on the economic damages through expert testimony, "the triers of fact are presumed to be capable of converting the losses into monetary equivalents on the basis of their

[37] *Burnette*, 52 Kan. App. 2d at 772, 379 P.3d at 387.

[38] *See* PIK Civ. 4th 171.32 (listing loss of attention or protection as pecuniary damages); *see also Howell v. Calvert*, 268 Kan. 698, 707-08, 1 P.3d 310, 317 (2000) (upholding the district court's inclusion of an instruction listing "loss of services, attention, care, protection, and advice and counsel" in an action by a parent for wrongful death of a child).

[39] PIK Civ. 4th 171.32.

[40] *Huffman*, 26 Kan. App. 2d at 693, 994 P.2d at 1078 (noting that the plaintiff had presented evidence of pecuniary damages by showing the decedent's "contributions around the house, *as well as the companionship he provided*.") (emphasis added).

[41] 52 Kan. App. 2d 751, 379 P.3d 372.

> own experience." In other words, because the jury has wide discretion in determining the amount of an award of damages, we should be predisposed toward upholding the jury's application of the district court's instructions.[42]

Kristine's evidence similarly shows an extremely close relationship between a mother and her son. The evidence supports a claim for pecuniary damages not only in the form of financial support and services, but also in the form of advice, protection, training, and guidance. The jury is presumed to be capable of placing a dollar value on such losses, if it finds that they are supported by the evidence.

**C. Kristine's alleged pecuniary losses are not too speculative.**

Krug's last argument is an interesting one, considering the assertions advanced above. Krug claims that Elijah wanted to be a stage technician, and had he obtained such a job, would have moved away and traveled frequently. In such a case, he would not have been available to provide support or services for Kristine. Similarly, Krug notes that "Elijah could have become any number of things" and "might have someday married and had children." Given these unknowns, Krug claims that an award of damages would be too speculative and unreliable.

This argument is not new, and it was addressed by the *Wentling* court. The court cited a 1931 United States Supreme Court case, which states:

> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.[43]

[42] *Id.* at 773-74, 379 P.3d at 388 (quoting *Wentling*, 237 Kan. at 514, 701 P.2d at 948).

[43] *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931).

This Court agrees. Of course some speculation will be required to assign a number to the pecuniary losses that Kristine suffered through the loss of her son. Speculation is required because nobody knows what Elijah's life could have been: it abruptly ended at the young age of 18. That tragic fact should not, and does not, preclude the recovery of pecuniary damages for Kristine's already immense loss. As the court stated in *Wentling*, although it is difficult to translate certain pecuniary losses into monetary figures, they "cannot be said to be based on 'speculation' as there is little doubt" that Kristine actually suffered such losses.[44]

Krug argues that too much speculation would be required for a jury to find that Elijah would have provided pecuniary benefits to Kristine throughout the remainder of his life. The Court disagrees. Given their relationship, it would require just as much speculation to find that he would not have provided her any. Accordingly, Krug's motion is denied.

**IT IS THEREFORE ORDERED** that Krug's Motion for Partial Summary Judgment (Doc. 14) is **DENIED.**

**IT IS SO ORDERED**.

Dated this 15th day of March, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

[44] *Wentling*, 237 Kan. at 514, 7010 P.2d at 948.